**Carl H. WIENBERG**
v.
**The UNITED STATES.**
No. 161–69.

United States Court of Claims.
May 15, 1970.

Glenn R. Graves, Washington, D. C., attorney of record, for plaintiff.

C. Michael Sheridan, Court of Claims Section, Dept. of Justice, with whom was Asst. Atty. Gen., William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COL-

LINS, SKELTON and NICHOLS, Judges.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

COLLINS, Judge.

In this action, brought pursuant to the provisions of the Universal Military Training and Service Act, 50 U.S.C.App. §§ 451–473 (1964), plaintiff, Carl H. Wienberg, is seeking to recover back salary wrongfully withheld as the result of the failure of the Internal Revenue Service (IRS) to promote him *in absentia* while he was in the military service. Both parties have filed motions for summary judgment, contending that there are not material issues of fact and that they are entitled to judgment as a matter of law. We find that the decision of the Board of Appeals and Review (BAR) of the Civil Service Commission holding that plaintiff is not entitled to recover back pay should be accorded finality, and, for reasons to be stated in this opinion, we enter judgment for defendant dismissing plaintiff's petition.

On July 8, 1963, plaintiff was hired as an Internal Revenue Agent (GS–7, Step 1) by the Audit Division of the Michigan District of the IRS. Thereafter, plaintiff went through a training program, completing classroom and on-the-job training satisfactorily. On February 17, 1964, he was placed on military leave, but he continued to perform his work until March 2, 1964, when he was released for active military duty. Plaintiff had already been informed in a letter by James R. Pendergraff, Chief, Employee Relations and Placement Section, dated February 11, 1964, that *"During your absence for military duty you will be given the same consideration for promotion that you would have received had you remained in your present position,* and, if you are selected for any higher grade position, your promotion will be made in absentia." Plaintiff became eligible for promotion to GS–9 on July 8, 1964, but his supervisors neglected to even consider him. Thereupon on January 17, 1966, when plaintiff returned to the IRS from the military, he was reemployed at the grade of GS–7, Step 3. Three months later on April 24, 1966, he was promoted to grade GS–9.

In July 1966, plaintiff discussed with one of his supervisors, Edmond T. Strasz, the reasons why he had not been promoted *in absentia* while in the military service. Mr. Strasz advised plaintiff that inadvertently he had not been considered for promotion in July 1964, but that looking back on plaintiff's performance in the training program, he would not have recommended plaintiff for promotion at that time anyway.

As a result, plaintiff filed a formal complaint with the Chief of the Audit Division alleging that he should have been promoted *in absentia* to GS–9 in July 1964, and further that, had this been done, he would have been eligible for promotion to GS–11 in July 1965. A hearing was held, and it was determined that plaintiff's complaint was without merit since there was no basis for a retroactive promotion. His appeal to the District Director of Internal Revenue was likewise rejected. However, in a further appeal to the Regional Director of the Civil Service Commission, it was decided, on October 9, 1967, without a hearing, that plaintiff should be promoted retroactively to grade GS–9, effective July 1964. The Regional Director felt that, based on the progress plaintiff was making at the time of his entry into the military, he would surely have been promoted had he not gone into the service. The IRS appealed this decision to the BAR, which determined on January 26, 1968, that plaintiff had not established his right to be promoted to GS–9 while on military duty. Thereupon, the decision of the Regional Director was reversed, and plaintiff's claim for back pay was denied. Plaintiff then filed suit in this court on March 21, 1969, urging us to reverse the decision of the BAR and grant him the relief requested, namely, the back pay to which he would

be entitled based on retroactive promotions to grade GS–9 in July 1964 and grade GS–11 in July 1965.

 This action was filed pursuant to certain provisions of the Universal Military Training and Service Act, 50 U.S.C.App. §§ 451–473 (1964). Section 459(b) specifically provides:

(b) Reemployment rights.

In the case of any such person who, in order to perform such training and service, has left or leaves a position (other than a temporary position) in the employ of any employer and who (1) receives such certificate, and (2) makes application for reemployment within ninety days after he is relieved from such training and service or from hospitalization continuing after discharge for a period of not more than one year—

(A) if such position was in the employ of the United States Government, its Territories, or possessions, or political subdivisions thereof, or the District of Columbia, such person shall—

(i) if still qualified to perform the duties of such position, be restored to such position or to a position of like seniority, status, and pay; or

\* \* \* \* \* \*

In addition section 459(c) (2) states:

(2) It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment.

Thus, it can be seen that the basic underlying principle of this act is that he who is "called to the colors [is] not to be penalized on his return by reason of his absence from his civilian job." Fishgold v. Sullivan Drydock & Repair

Corp., 328 U.S. 275, 284, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230 (1946). However, this certainly does not imply that a returning veteran has an *absolute right* to be promoted *in absentia* while he is away on military duty. Instead, the distinction between when a returning veteran is entitled to promotion *in absentia* and when he is not is laid down by the Supreme Court in the two cases of Tilton v. Missouri Pac. R. R., 376 U.S. 169, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964), and McKinney v. Missouri-K.-T. R. R., 357 U.S. 265, 78 S.Ct. 1222, 2 L.Ed.2d 1305 (1958).

In *McKinney*, the Court agreed that section 459(c) (2), *supra*, entitled the returning employee to a position comparable to the one he occupied before he left and possibly even comparable to the one he would now hold had it not been for the military service. However, the Court limited the provision only to those situations where changes and advancements in status would occur simply by virtue of continued employment or some form of automatic progression. Hatton v. Tabard Press Corp., 406 F.2d 593 (2d Cir.1969) (promotion automatic as long as employee meets minimum standards necessary to avoid discharge). As a result, section 459(c) (2) was held *not* to apply to those situations where promotion was dependent upon such factors as ability, experience, effort, and the employer's discretion. Poore v. Louisville & Nashville R. R., 235 F.2d 687 (5th Cir.1956); Addison v. Tennesee Coal, Iron & R. R., 204 F.2d 340 (5th Cir. 1953).

In *Tilton*, the Court followed this same standard and found that plaintiffs' promotions, upon completion of the training period, were automatic and neither discretionary with their employer nor dependent upon their ability. Instead, their right to a promotion was dependent simply upon the passage of time. (Plaintiffs had to complete 1,040 days of actual work as carmen mechanics before they could acquire permanent seniority as journeymen.) *But see*

Poore v. Louisville & Nashville R. R., *supra*, where it was held that promotion was not automatic with the mere elapse of 1,040 days.

In the instant case, plaintiff is not contending that he was entitled to an automatic promotion.[1] Instead, he is arguing mainly that once his promotion was considered by his supervisors, they applied an improper standard in determining whether he should have been promoted *in absentia*. Thus, the *McKinney* and *Tilton* cases, while helpful to a certain extent, are certainly not dispositive of this case.

More specifically, plaintiff urges that the correct standard to be applied in this case is the one laid down in section 459(c) (2), *supra*, and in IRS Manual Supp. 18G–4, § 3.02 (1957), which reads as follows:

> It is the policy of the Revenue Service that all trainees called into the military service (1) who have substantially completed their training courses; and (2) whose progress has been such that they would have been promoted had they remained in the Revenue Service; [*sic*] will be promoted in absentia.

Based on these provisions, plaintiff contends that the IRS was obliged to consider on July 8, 1964, the quality of his work from July 8, 1963, to March 2, 1964, and then project how much improvement he would have made between March 2. 1964, and July 8, 1964. By considering both these factors, management could then properly determine whether plaintiff would have been promoted had he remained on the job. Plaintiff contends that management only considered the quality of his work at the time he left for military service and did not base its decision on a projection of how much he might have improved over the next 4 months. Had the IRS made such a projection, plaintiff contends that there is no doubt but that he would have been promoted *in absentia*.

To support the above contention plaintiff relies on a number of factors and pieces of evidence. For instance, he places great emphasis on the testimony of Mr. Strasz at the grievance hearing. In response to a question asking Mr. Strasz whether he thought plaintiff would have been promoted had he continued to improve as he had up until the time of his discharge, Strasz replied: "He probably would have been promoted, yes." Plaintiff also points to the evaluation reports, all of which rate him in the "good" or "very good" category as opposed to "fair" or "unsatisfactory."[2] He then refers to a statement by his on-the-job instructor, Mr. William R. Murphy, in a field audit report which reads: "In conclusion, Mr. Wienberg has shown during the field audit portion of the on the job training program that if he continues to work hard he will develope [*sic*] into a good Internal Revenue Agent." And finally he points out that within 3 months after his return to the job from the military, he was promoted to GS–9.[3]

---

1. Plaintiff did not make an argument in his pleadings or at the administrative level that he was entitled to an automatic promotion. It was not until his oral argument before this court that plaintiff contended that, due to a special practice by the IRS in regard to probationary employees, he should have been promoted automatically. This aspect of plaintiff's case will be discussed in detail later in this opinion.

2. In answer to this reference by plaintiff to his good evaluation reports, defendant cited a number of cases, all of which held that an agency could not be prevented from removing an employee on the basis of unsatisfactory performance simply because he had been given satisfactory performance ratings. Armstrong v. United States, 405 F.2d 1275, 186 Ct.Cl. 539, cert. denied, 395 U.S. 934, 89 S.Ct. 1997, 23 L.Ed.2d 419 (1969); Angrisani v. United States, 172 Ct.Cl. 439 (1965); see Chisholm v. United States, 149 Ct.Cl. 8 (1960); Thomas v. Ward, 96 U.S.App. D.C. 302, 225 F.2d 953 (1955), cert. denied, 350 U.S. 958, 76 S.Ct. 348, 100 L. Ed. 833 (1956).

3. It would definitely be improper for us to use plaintiff's performance in his job

■ Despite the above-mentioned factors, there is really nothing substantial in the record to support plaintiff's claim that he was judged solely on what he had done prior to his military service and not on what sort of progress he would have made had he remained on the job. As a matter of fact, there is evidence and testimony to the contrary. Mr. Strasz specifically testified at the hearing that his determination not to promote plaintiff was based on all the facts *as of the time plaintiff became eligible for promotion,* which was of course in July 1964. He further stated that his answer that plaintiff "probably would have been promoted" was purely hypothetical and conjectural since it was based strictly on the assumption that plaintiff's rate of progress would continue up until the time of his promotion. In addition, Mr. Strasz went on to testify that he did give some consideration to plaintiff's rate of progress, but there were just not enough tangible factors on which he could reach a conclusion that plaintiff should have been promoted. This testimony is further buttressed by what Strasz said in a letter to plaintiff on July 28, 1966:

> At the end of the training phase I had a discussion with you and pointed out to you that, although you had improved, you would have to show sustained performance and improvement during the rest of your probationary period to be retained as an internal revenue agent.

> \* \* \* \* \* \*

> If I had been asked to consider if you should have been promoted in absentia, I feel I would not have recommended the promotion. This conclusion is based on the fact that you needed considerable aid and guidance to be retained in the program and on the fact that there was no opportunity

to determine if you had improved sufficiently to be promoted to GS-9.

In addition, it should be pointed out that this same letter contained a listing of what Strasz considered to be plaintiff's most glaring weaknesses, namely lack of self-confidence in his ability and his authority as a revenue agent, general weakness in auditing, and inability to deal with a taxpayer when the atmosphere became strained. These were the main points which caused Strasz to question whether plaintiff would be able to successfully perform the duties of an internal revenue agent.

Thus, in regard to this first claim by plaintiff that the agency did not apply the correct standard in considering his promotion, we feel that the evidence in the record is to the contrary and that, in denying his promotion, plaintiff's supervisors considered all aspects of his work both as to performance and expected progress. Certainly, it would be an abuse of discretion for an employer to become too speculative and conjectural in determining just how much progress and development might be attained by an employee during a period in which he is absent from work. Consequently, the BAR was correct when it stated that "the agency did give consideration to the appellant's retroactive promotion *to the date he should have been considered for promotion in absentia* \* \* \*." (Emphasis added.)

■ Plaintiff's next argument is that the proper burden of proof to be applied in such a case as this is that plaintiff must prove his claim to a "reasonable certainty" as specified in Tilton v. Missouri Pac. R. R., *supra,* and not that he must prove his claim by "clear and convincing" evidence as required by the BAR. Assuming for the moment that the BAR did require plaintiff to meet a "clear and convincing" burden of proof,

following his return from the service as a guideline for projecting his performance during the 4 months following his entrance into the military. Much can happen to an individual during a 2-year period to change his attitude, ability, and

overall performance. Also, it certainly would have been wrong for plaintiff's supervisors to have considered this factor since their de⁺ermination was to be based on the situation as of July 1964.

we still cannot accept this contention by plaintiff. What the Court is saying in *Tilton* (and also what the court of appeals is saying in Power v. Northern Ill. Gas Co., 388 F.2d 427 (7th Cir.1968)) is that a plaintiff, in order to recover under the Universal Military Training and Service Act, must show with "reasonable certainty" that advancement would have occurred simply by virtue of continuing employment. In both the *Tilton* and *Power* cases, the respective courts were dealing with situations where the plaintiffs were claiming that their advancement was automatic as opposed to being discretionary. Thus, the courts were simply requiring that the plaintiffs show with "reasonable certainty" that their advancement would have occurred automatically with the passage of time. In the case at hand, plaintiff never argued before the BAR that his promotion was automatic with the passage of time.[4] Consequently, the so-called requirement that a "reasonable certainty" burden of proof must be employed would not apply to this case since the claim (claim of automatic promotion) giving rise to this particular burden of proof was never made.

In addition, if we were to transfer the requirement of "reasonable certainty" to claims such as plaintiff's first claim which was just discussed, we would still find that plaintiff had not satisfied his burden of proof. Based on the entire record, we could not say that plaintiff established with "reasonable certainty" that, had his promotion been given timely consideration and had the proper standard been applied, he would have been promoted to GS–9 in July 1964.

Plaintiff's final argument is one which was not argued before the BAR but instead was presented for the first time by plaintiff during his oral argu-ment before this court. Plaintiff's contention is that it is a policy of the IRS in the type of training program found in this case to either promote or fire a probationary employee after 10 months.[5] Thus, the assumption is that since plaintiff was not fired, under the above-stated informal policy, he should have been promoted.

■ There are several reasons why this argument by plaintiff must fail. First of all, there is absolutely nothing concrete in the record to sustain the existence of such an unwritten policy. In addition, the mere fact that plaintiff failed to present this argument at the administrative level prevents us from attaching any weight to it. Haynes v. United States, 418 F.2d 1380, 190 Ct.Cl. 9 (Dec.1969); Pine v. United States, 371 F.2d 466, 467–468, 178 St.Cl. 146, 148 (1967). This court has repeatedly held that failure to present a claim at the administrative level amounts to a failure to exhaust administrative remedies in regard to that claim, thus precluding this court from granting relief on that ground. Even if we wanted to consider this claim by plaintiff, we would have to remand the case to the trial commissioner for a finding of fact in regard to the actual existence of such a custom. However, to take such a course of action would be an abuse of discretion by this court since there is nothing to support the existence of such a practice other than plaintiff's mere oral allegation that such a custom exists. Consequently, we are obliged to refuse to consider this claim by plaintiff on the basis of his failure to first pursue it at the administrative level.

■ Although not directly relevant to the issues raised by plaintiff, it is still helpful to refer to the provisions in the Internal Revenue Manual (1964) re-

---

4. See note 1, where reference is made to such an argument being made for the first time by plaintiff during his oral presentation before this court.

5. In Hatton v. Tabard Press Corp., supra, such a policy actually existed in defend-ant's printing business, whereby an employee such as the plaintiff, who was a miscellaneous composing room employee, would either be promoted or discharged for incompetence.

lating to promotion under the training and development programs. For instance, 1861.82 provides:

(3) An important aspect of these programs is the need for timely promotion of participating employees. On the other hand, promotions must not be made automatically, or based solely upon the completion of a specified period of time.

(4) Although there is no evidence that promotions under these programs have become automatic, it is desirable to emphasize the responsibility of all concerned with these programs, especially the primary and secondary supervisory levels, to continuously assure themselves that promotions do not become automatic.

Also 1861.83 states:

(1) All promotions under the training and development programs must be based upon a *positive determination* by appropriate supervisory levels that the employees have *actually demonstrated* their capacity to perform the higher level duties of the positions to which they are promoted. * * * (Emphasis added.)

These provisions show that not only are promotions not automatic, but the supervisor has a positive obligation to assure himself that his employees have the actual demonstrated ability to perform the work of the next highest grade. It is obvious that Mr. Strasz in this case did not feel that plaintiff in July 1964 had achieved the necessary progress or had demonstrated the ability to perform the duties of a GS–9. Since there is no doubt but that this is a matter purely within the judgment and discretion of the employee's supervisor, we would clearly be overstepping our bounds if we were to substitute our judgment for that of plaintiff's supervisor. Tierney v. United States, 168 Ct.Cl. 77 (1964); Umbeck v. United States, 149 Ct.Cl. 418 (1960); Bortin v. United States, 138 F. Supp. 251, 133 Ct.Cl. 856 (1956); ac-

cord, Powell v. Brannan, 91 U.S.App.D. C. 16, 196 F.2d 871 (1952); *see* Gearinger v. United States, 412 F.2d 862, 188 Ct.Cl. 512 (1969); Boruski v. United States, 155 F.Supp. 320, 140 Ct.Cl. 1 (1957). The general rule against judicial promotions was well stated in Tierney v. United States, *supra* at 80:

The power of appointment is within the discretion of the head of a department. It is an executive function which involves exercising the discretion of the executive. * * * If this court were to grant recovery to plaintiff it would in effect bestow upon plaintiff a promotion which he never received. In so doing, this court would be making an administrative decision. Such action would be a clear usurpation by the judiciary of an administrative function. * * *

In addition, we cannot say that the action of plaintiff's supervisor or of the IRS was in any way arbitrary, capricious, or in bad faith. *See* Umbeck v. United States, *supra*; Carter v. Forrestal, 85 U.S.App.D.C. 53, 175 F.2d 364, cert. denied, 338 U.S. 832, 70 S.Ct. 47, 94 L.Ed. 507 (1949). To the contrary, we find that the agency decision was supported by sufficient evidence to justify its belated refusal to grant plaintiff a retroactive promotion.

We therefore, find that, in evaluating plaintiff's record for purposes of promotion, his supervisor did not apply the wrong standard, nor was his decision arbitrary or capricious. Furthermore, based on the regulations cited, promotion in plaintiff's case was not automatic but was within the discretion of his supervisor and was to be based on the employee's performance and ability. Therefore, the decision of the BAR (which did not apply the wrong burden of proof) must be upheld and judgment granted for defendant. Plaintiff's motion for summary judgment is denied; defendant's motion for summary judgment is granted; and plaintiff's petition is dismissed.