Francis SKROBOT

v.

The UNITED STATES.

No. 338-74.

United States Court of Claims.

Dec. 17, 1975.

James Ronald Rosa, Staff Counsel, American Federation of Government Employees, AFL–CIO, attorney of record for plaintiff. L. M. Pellerzi, Gen. Counsel, American Federation of Government Employees, AFL–CIO, Washington, D. C., of counsel.

Marc J. Fink, Washington, D. C., with whom was Asst. Atty. Gen. Rex E. Lee, Washington, D. C., for defendant.

Before DAVIS, NICHOLS and KUNZIG, Judges.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

KUNZIG, Judge.

In this civilian pay suit, plaintiff, a Defense Supply Agency (Agency) employee, asks the court to reverse a ruling by the Civil Service Commission Board of Appeals and Review (BAR) denying his request for promotion from GS–13 to GS–14 and corresponding back pay. Plaintiff had urged that the assignment of temporary additional work entitled him to the higher position. Because we hold that plaintiff fails to demonstrate a legal right to promotion and that the BAR's decision was in no way arbitrary and capricious, we conclude that plaintiff is not entitled to recover.

The relevant facts are stipulated. Plaintiff is a nonprobationary civil servant with tenure and veterans preference rights who served as Assistant Chief, Production Division (GS–13) from 1968 until 1972. In November 1970, the Agency, then in the process of an extensive reorganization, added a

"post award function" [1] to plaintiff's work. Plaintiff subsequently requested an audit of his position, asserting that he was performing GS–14 work. The Agency failed to perform the audit. On July 30, 1972, the Agency abolished plaintiff's Assistant Chief position and reassigned him to another GS–13 job. The Agency then created a new GS–14 post encompassing duties similar to work performed by plaintiff from November 1970 to July 1972. It filled this new position with a GS–14 assigned in connection with a reduction in force.

Plaintiff instituted a grievance proceeding, asserting that his GS–13 position (including the added work) had been upgraded to GS–14 without a significant change in duties and responsibilities to correct a classification error and sought noncompetitive promotion based on Chapter 335, Subchapter 4–3b, Federal Personnel Manual (FPM). The Civil Service Commission (CSC) hearing examiner agreed with plaintiff, but the Agency refused to accept this conclusion.[2]

Plaintiff appealed to the CSC Regional Director who also found in favor of plaintiff. This time the defendant appealed. The BAR reversed the Regional Director and concluded that plaintiff was not entitled to a noncompetitive promotion to the new GS–14 position. Following this reversal, plaintiff instituted the present action.

Plaintiff attacks the BAR's decision on four fronts arguing that: I. Plaintiff had a legal right to a noncompetitive promotion and BAR's denial was arbitrary and capricious; II. Plaintiff's lateral reassignment to the substitute GS–13 position was the equivalent of a reduction-in-rank. III.

Plaintiff was erroneously denied an opportunity to compete for the GS–14 position; and IV. Plaintiff was entitled to a "career" promotion. We reject each of these contentions.

## I. NONCOMPETITIVE PROMOTION

Plaintiff's key argument is that he has a legal right to a noncompetitive promotion under subchapter 4–3b.[3] According to plaintiff, this portion of the FPM applies to his situation because the new GS–14 position provided for no significant change in duties and responsibilities and the Agency created it to correct a classification error in the Assistant Chief position. Plaintiff argues that he is legally entitled to a promotion and that the BAR's failure so to find was arbitrary and capricious. Defendant counters that the new GS–14 position provided for a significant change in job descriptions and, therefore, a significant change in duties and responsibilities. The BAR agreed with defendant's position. We concur.

■ We start with the premise that the Court of Claims may not grant promotions where the exercise of such power would result in substitution of the court's judgment for executive agency discretion. *Hirsch v. United States,* 499 F.2d 1248, 1250, 205 Ct.Cl. 256, 260 (1974); *Wienberg v. United States,* 425 F.2d 1244, 1251, 192 Ct.Cl. 24, 35 (1970); *Tierney v. United States,* 168 Ct.Cl. 77, 80 (1964). Our power, if any, to grant promotions and corresponding back pay hinges upon a party's legal entitlement to such a remedy based upon a statute or regulation. *Selman v. United States,* 498 F.2d 1354, 204 Ct.Cl. 675 (1974);

---

1. Plaintiff has not defined the exact nature of this post award function.

2. Under 5 C.F.R. § 771.310 (1972), the applicable grievance regulation in effect at the time of plaintiff's hearing, the Agency was not required to accept the recommendations of the hearing examiner.

3. Chapter 335, Subchapter 4–3b, FPM (1973) in effect at the time of the events in this action provides:

    "*Promotion to positions upgraded without significant change in duties and responsibil-*

*ities.* An agency *must* provide for an exception to competitive promotion procedures to allow for the promotion of an incumbent of a position which has been *upgraded without significant change in duties and responsibilities* on the basis of either the issuance of a new classification standard or the correction of a classification error. If the incumbent meets the legal and qualification requirements for the higher grade, he *must be promoted* noncompetitively unless removed from the position by appropriate personnel action." (emphasis added).

*Doggett v. United States,* Ct.Cl. No. 459–73 (Slip Opinion July 11, 1975).[4] Absent a legal right to promotion, an employee may not obtain a higher position or the salary incident thereto since his "rights and salary are based solely on the position to which he has been officially appointed." *Bielec v. United States,* 456 F.2d 690, 696, 197 Ct.Cl. 550, 560 (1972). *See also Desmond v. United States,* 201 Ct.Cl. 507, 525–526 (1973); *Dianish v. United States,* 183 Ct.Cl. 702, 707 (1968). Plaintiff contends that subchapter 4–3b provides the basis for a legal entitlement in his case and that we, therefore, have the power to promote him.

█ We agree that subchapter 4–3b may, in a proper case, create a legal entitlement to promotion. It is clearly cast in *mandatory*, not permissive, form: "An agency *must* provide for an exception to competitive promotion * * *. If the incumbent meets the legal and qualification requirements for the higher grade he *must* be *promoted* noncompetitively * * *." (emphasis added). There is no room for agency discretion here. If the guidelines of 4–3b are met, an employee establishes a legal right to a promotion. However, it is at this point that our agreement with plaintiff ends for we find that plaintiff has been unable to bring his situation within the confines of 4–3b.

Before an employee may obtain the benefits of subchapter 4–3b he must demonstrate that two conditions exist. First, the agency must have upgraded the position "without [a] significant change in duties and responsibilities." Second, the elevation must have resulted from "either the issuance of a new classification standard or the correction of a classification error." As we interpret these two conditions, plaintiff cannot demonstrate that they arise in this case and, therefore, fails to present a clear legal entitlement to promotion.

### (1) "No duty change"

█ The "no duty change" clause of subchapter 4–3b poses our first question for interpretation. Does this phrase require no change in duties and responsibilities of work *actually performed,* or does it relate to no alteration of duties and responsibilities embodied in the employee's *job description?* We prefer the latter interpretation.

Construction of the "no duty change" language presents us with an uncomfortable dilemma. On one hand, we recognize that to compare old and new job descriptions to some extent exhalts form over substance and may unfairly deny a promotion to a deserving employee who has diligently performed work above and beyond the call of his job description. However, the alternative is even more unpalatable. Thousands of government employees perform functions not formally established by their job descriptions. Indeed, in many instances, jobs grow gradually over the years, not through planned additions to duties, but because the exigencies of the moment require employees to assume added tasks. For us to read the "no duty change" of subchapter 4–3b as applying to duties *actually performed* would raise the specter of a massive volume of constant civilian pay litigation and administrative chaos from thousands of grievance hearings.

Moreover, subchapter 4–3b creates an *exception* to the general policy of competitive promotion in the government civil service merit system. If we are to avoid irreparable damage to this fundamental principle upon which the merit system is based, we must read such an exception narrowly. Therefore, we conclude that the "no duty change" language of subchapter 4–3b refers to job descriptions, rather than to actual duties performed.

█ In this fact situation, it is quite clear that there was a significant change in the specific job descriptions involved. Plaintiff's old Assistant Chief job description did not contain the "post award" function embodied in the new GS–14 job description. Plaintiff thus cannot bring his case within subchapter 4–3b and fails under point (1) to establish a legal entitlement to promotion.

---

4. *See also Peters v. United States,* Ct.Cl., 534 F.2d 232, released today.

### (2) "Classification error"

Even if we found no significant change in duties and responsibilities, we would be compelled to reject plaintiff's 4–3b contentions based upon failure of the second condition, the "correction of a classification error" clause.[5] *Both* conditions must obtain before an employee may enjoy the benefits of 4–3b. Plaintiff's argument is that the new GS–14 position was created to correct the erroneous classification of the GS–13 Assistant Chief position. Again, our consideration of 4–3b evolves into a question of interpretation. This time we must determine the meaning of "classification error" and apply it to the facts of plaintiff's case.

■ For the same policy considerations[6] that compelled us to read the "no duty change" clause of subchapter 4–3b narrowly, we are forced to give a similar narrow construction to the "classification error" language. We construe the term "classification error" as limited to errors in the classification *process*. It does not apply to instances where actual duties performed do not match job descriptions because the agency has added or taken away responsibilities in the course of day to day work. In other words, we confine "classification error" to the situation where the official responsible for classifying the position has erred. Otherwise we would put this court in the position of holding that thousands of employees engaged in daily tasks differing only in minute detail from their job descriptions are the victims of classification errors. Such a decision would drive the civil service system to its knees under the burden of a multitude of grievances filed by "erroneously classified" employees and would grant countless noncompetitive promotions. We decline to create such a situation.

5. The upgraded position must result from either the issuance of a new classification standard or the result of a classification error. *See* note 3, *supra.* Plaintiff does not assert and there is no indication that any new classification standards were issued here.

6. Administrative chaos created by a massive volume of constant litigation coupled with the need to protect the fundamental principles of the civil service merit system.

In the instant case, plaintiff neither alleges nor attempts to prove that an evaluator made an error in classifying the old Assistant Chief job description. Therefore, we conclude that plaintiff has failed to demonstrate "classification error" (point (2)) as well as "no duty change" (point (1)) and cannot avail himself of the noncompetitive promotion provisions of subchapter 4–3b. The BAR did not err by finding 4–3b inapplicable to the facts of plaintiff's case.

■ Moreover, the fact that plaintiff requested an audit of his job and that the audit was delayed in spite of requirements to the contrary[7] gives plaintiff no vested right to a promotion where 4–3b is inapplicable. The Agency's failure to comply with the annual review requirements did not grant any legal right to a promotion for plaintiff, nor did it subject the Agency to the outlandish liability of allocating vested promotion rights outside the normal competitive merit system to employees whose jobs were merely not reviewed on time. Further, we cannot say that a few months' delay beyond the end of the annual period is particularly unreasonable where the Agency is admittedly in the process of an ongoing major reorganization, presumably as the result of cutbacks in the Vietnam war effort. Thus the delay itself did not in any way grant plaintiff a right to a noncompetitive promotion where no statute or regulation calls for such promotion as a result of the delay.

To summarize, we hold that plaintiff has no legal right to promotion because he has not brought his situation under the (1) "no duty change" and (2) "classification error" requirements of subchapter 4–3b and also because the Agency's reclassification delay

7. Chapter 312, subchapter 4–3. Federal Personnel Manual (1973), in conjunction with the Supplemental Appropriation Act of 1952, as amended (revision note to 5 U.S.C. § 3101 (1970)) required annual review of positions "to assure that the position description is accurate and classification is proper."

did not bestow any legal rights upon him. We, therefore, uphold the BAR's decision to deny plaintiff's noncompetitive promotion.

## II. REDUCTION–IN–RANK

█ Plaintiff's second argument, that he was improperly reduced in rank by virtue of his lateral reassignment to the substitute GS–13 position, is based on a regulation with the same conditions as those found in 4–3b (discussed in Part I, *supra*).[8] Plaintiff's reduction-in-rank contention relies on the provisions of Supplement 752–1, Subchapter S1–4, Paragraph b(2), FPM (1973).[9] It merely considers the identical situation from a different angle.[10] Since there was a significant change in the job description of plaintiff's position after the addition of the "post award function" and since no reviewing official made a classification error in evaluating plaintiff's Assistant Chief position, we reject plaintiff's reduction-in-rank assertion for the same reasons that we rejected his right to promotion argument and therefore uphold the decision of the BAR.

## III. OPPORTUNITY TO COMPETE

█ Plaintiff's third contention is that the Agency improperly denied him an opportunity to compete for the new GS–14 position. We begin with the proposition that the Agency filled the newly created GS–14 position noncompetitively in compliance with the reduction in force (RIF) statute. 5 U.S.C. § 3502 (1970). There is nothing in the record which indicates that this action was anything but proper. Further, even if plaintiff lost an opportunity to compete for the GS–14 position, we cannot, at this late date, indulge in conjecture over his chances to win the competition. Plaintiff, in effect, asks the court to find that he probably would have gained the position had he been given an opportunity to compete. We must decline plaintiff's invitation to gaze into a crystal ball. Hundreds of more qualified applicants might well have contested his aspirations. It is axiomatic that courts do not engage in speculation. *Cf., Palmer v. United States*, 206 Ct.Cl. 851, 852 (1975). Moreover, plaintiff does not specifically ask for a present opportunity to compete, but demands an instantaneous noncompetitive promotion.[11] We hold under the appropriate RIF statute that plaintiff was not erroneously denied an opportunity to compete. Alternatively, if by any stretch of the imagination he were so denied, a lost opportunity to compete creates no legal rights for which we can fashion a remedy in this case.

## IV. CAREER PROMOTION

█ Plaintiff's final argument is that he was entitled to a noncompetitive "career promotion" by virtue of Chapter 335, Subchapter 4–2d, FPM (1973).[12] Like subchap-

8. Indeed, the FPM cross-references the two regulations.

9. Supplement 752–1, Subchapter S1–4, Paragraph b(2) FPM (1973) provides in part:

"* * * The incumbent of a position is entitled to promotion to the grade determined appropriate for the work he has been performing, if he is eligible for promotion in two specific circumstances: * * * (ii) when *error in classification* has deprived him of the proper grade. (When there is a *significant change in job content* see (S1–4c(1)) [reduction in rank inapplicable]. His assignment to a position in a grade below the proper grade of his position is a reduction in rank whether or not the upgrading decision has been put into effect by official classification action at the time of the assignment * * *." (emphasis added).

10. 4–3b analyzes the personnel action from the view of a right to promotion while S1–4, b(2) contemplates the same situation from the right not to be reduced in rank.

11. *Defendant argues that having failed to assert the lost opportunity to compete issue at the BAR, plaintiff is precluded from raising it for the first time at this court. Haynes v. United States, 418 F.2d 1380, 1382–1383, 190 Ct.Cl. 9, 12–13 (1969). Plaintiff counters that he was trapped into this situation by the CSC Regional Director's removal of the issue from the case and plaintiff's failure to urge it at the BAR was, therefore, excusable and should not preclude assertion before the Court of Claims. Since we reject plaintiff's competition argument on other grounds, we need not reach the exhaustion problem.*

12. Subchapter 4–2d provides in part:

"*Career promotion of an employee whose position is reconstituted in a higher grade.* An agency may make a career promotion of an

ter 4–3b (mandatory right to promotion) and S1–4, b(2) (reduction-in-rank), subchapter 4–2d (career promotion) contains two main conditions. They are somewhat different from those discussed above. First, the newly created position must be the result of "accretion of additional duties." Second, the accretion must not have been the result of planned management action. However, the crucial difference between 4–2d and 4–3b is that career promotions (4–2d) are *permissive or discretionary* in nature rather than mandatory (as in 4–3b). "An agency *may* make a career promotion." [13] Plaintiff readily concedes this, but argues, given the equities of his case, the Agency "could and should * * have granted plaintiff a noncompetitive career promotion." Whatever the force of plaintiff's equitable argument, the court cannot substitute its judgment for agency discretion. *Hirsch, supra; Wienberg, supra; Tierney, supra.* The Agency has exercised this discretion by declining to grant a career promotion (4–2d) to plaintiff. We may not override this decision unless there has been a clear abuse of discretion. *Drucker v. United States,* 498 F.2d 1350, 204 Ct.Cl. 514 (1974). As we stated in *Drucker,* the proper standard for review of agency conduct is action " 'so clearly wrong' as to be arbitrary." *Drucker, supra,* 498 F.2d at 1352, 204 Ct.Cl. at 518. The record fails to demonstrate any such abuse of discretion in this case and we therefore uphold the decision below not to grant plaintiff a career promotion.[14]

In summary, we have considered and rejected plaintiff's promotion and backpay claims based upon legal right to promotion, improper reduction-in-rank, lost opportunity to compete and "career promotion." Moreover, were the court to grant a noncompetitive promotion on the facts herein, such decision could spur a massive volume of constant litigation resulting in administrative chaos and would be destructive of the fundamental principle of civil service— the competitive merit system. Therefore, we hold that the decision of the BAR was legally correct and was in no way arbitrary and capricious.

Accordingly, plaintiff's motion for summary judgment is denied, defendant's motion for summary judgment is granted, and plaintiff's petition is dismissed.

DAVIS, Judge (dissenting):

I see this as one of those relatively rare instances in which a claimant has legal entitlement to a promotion. Subchapter 4–3b of Chapter 335 of the Federal Personnel Manual (quoted in footnote 3 of the court's opinion) seems to me to fit all the metes and bounds of this case. In November 1970 management deliberately added to the GS–13 position some additional duties which plaintiff performed for over a year. This new function was "perhaps the most significant factor" in determining whether the Assistant Chief position, GS–13, was worthy of a GS–14 grade level. According to the Joint Stipulation of Fact, "Mr. Skrobot made several unsuccessful efforts to have a desk audit or evaluation conducted of his Assistant Chief, GS–13 position after the post award function was put into his job in November, 1970. Management failed to conduct such an evaluation for the approximately 15 months interim between placing of the post award function in his job in November, 1970, and his reassignment from the Assistant Chief job on July 30, 1972." The Joint Stipulation then goes on to say: "Mr. Skrobot, as Assistant Chief, GS–13, performed substantially the same duties from November, 1970, until his reassignment in July, 1972, as constituted the new Assistant Chief position at Grade GS–14." There is also no doubt that the plaintiff met

---

employee whose position is reconstituted in a higher grade because of the *accretion of additional duties* and responsibilities if the accretion was *not the result of planned management action.*" (emphasis added).

13. *Id.*

14. Since plaintiff's "career promotion" argument fails because we cannot substitute our judgment for agency discretion, we find it unnecessary to analyze the steps taken by the Agency in terms of "planned management action."

the legal and qualification requirements for the higher grade; he had been doing the work for considerably more than a year.

On this undisputed factual predicate I would hold that the upgrading of the post from GS–13 to GS–14 was, in the terms of the Federal Personnel Manual, an upgrading "without significant change in duties and responsibilities" on the basis of "the issuance of a new classification standard" (for the new GS–14 position) or of "the correction of a classification error" (in the old GS–13 job). The words fit very well in their ordinary sense, and that normal meaning furthers the obvious purpose of the rule to assure incumbents that they will get the benefit of the upgrading of the same jobs they have already been satisfactorily filling for some time.

To interpret Subchapter 4–3b, as the court does, to refer only to a formal change in the original job description—no matter how much has meanwhile been officially added to the position or how long the incumbent has been performing the added duties—is to limit the provision, without adequate ground, to only one-half of the instances included within the sweep of the words and the apparent objective. I can see no persuasive reason why the Federal Personnel Manual should wish to protect those employees sitting in posts with job descriptions which were incorrect from the beginning—and not those whose duties are officially increased while they are on the job and who then perform the original plus the added functions for over a year. To my mind that would be a technical and haphazard distinction, completely arbitrary in its impact and unrelated to the real world. From the employee's viewpoint there is no warning in the words of the subchapter that any such peculiar difference is being established.

The court fears that the reading I espouse would lead to administrative chaos and massive litigation. I do not share that prophecy. In this case the employee did not simply undertake additional work but was officially ordered to do it—and this extra work was "perhaps the most significant fac-tor" in the upgrading of the position. He filled the expanded job for over a year and during that period sought several times, unsuccessfully, to have the slot upgraded. Ultimately, the post was reclassified but he was not put into it. This does not seem, in its totality, to be a common situation. If it is, then (in my view) the employees are entitled under the terms and spirit of the Manual to fill the higher grade. The Civil Service Commission can abolish or change the regulation for the future if it feels it misspoke itself in 4–3b or unwittingly opened the door to chaos.