## UNITED STATES *v.* McLEAN.

1. After the salary of a deputy-postmaster has been fixed, it cannot be increased until a readjustment of it, based upon his quarterly returns, shall have been made by the Postmaster-General.

2. Such readjustment is an executive act, taking effect in all cases prospectively ; and, if it be not performed, the law imposes no obligation upon the government to pay an increased salary.

3. Courts cannot enforce rights depending for their existence upon a prior performance by an executive officer of certain duties which he has failed to perform.

APPEAL from the Court of Claims.

This was an action by McLean to recover $569.50 for compensation which he claimed to be due him as deputy-postmaster at Florence, Kansas, from April 14, 1871, to July 1, 1872.

The Court of Claims found in his favor, and rendered judgment for that amount. The United States appealed to this court.

The facts are stated in the opinion of the court.

*The Solicitor-General* for the United States.
*Mr. Harvey Spalding, contra.*

MR. JUSTICE STRONG delivered the opinion of the court.

The case of the claimant appears to be a hard one; but we think he has no remedy by suit in the Court of Claims. His claim rests not upon any contract with the government, either express or implied, but upon acts of Congress providing for a regulation of the salaries of deputy-postmasters.

On the thirteenth day of March, 1871, he was appointed postmaster at Florence, Kansas, and his salary was fixed at seven dollars, until it could be ascertained what the business of his office would be. He entered upon the duties of the appointment on the 14th of April, 1871, and continued therein until after July 1, 1872, from which date his salary was fixed at $560 a year. His claim now is, that, under the statutes prescribing the basis for compensation, adjustment and readjustment of salaries of postmasters, he is entitled to be paid for his service between April 14, 1871, and July 1, 1872, the sum of $578.

Before examining the acts of Congress bearing upon the subject, some further notice of the facts is necessary. In a letter accompanying the claimant's appointment, he was required to make out, at the end of each quarter, and forward to the Third Assistant Postmaster-General, a statement, under oath, of the total value of postage-stamps cancelled during the quarter; and he was informed that his salary could not exceed the amount to which the office would be entitled, from commissions and box-rents under the former laws, but that it would be readjusted at the proper time by the Postmaster-General, on the basis of the amount of business done, as shown by the quarterly statements required. On the 1st of June, 1871, he was instructed from the department, that, in order to enable the Postmaster-General to review and readjust his salary from and after the first day of July, 1872, he should keep an account of the total number of stamps cancelled at his office for the six months beginning July 1, 1871, and ending Dec. 31, 1871; also the amount collected on unpaid letters, on newspapers, and other printed matter, and for box-rents during the same period; and that, on the 1st of January, 1872, he should make out and forward a sworn

statement of the amount arising from each of those sources. With this latter order he complied, and on the 1st of January, 1872, he forwarded a sworn statement, showing the revenue of his office to have been $482.67 during the six months next preceding Jan. 1, 1872 ; and, at the regular biennial adjustment of salaries, in June next following, the Postmaster-General readjusted his salary on the basis of his statement, and fixed it at $560 a year, from July 1, 1872. From April 14, 1871, till July 1, 1872, the claimant made no application for readjustment of his salary as first fixed, unless a letter written by him to the Third Assistant Postmaster-General, complaining of the inadequacy of his compensation, can be regarded as an application for readjustment. But that letter was unaccompanied by any sworn statement of the income of his office, and it furnished no basis for readjustment ; nor was there any subsequent application, except that, in October, 1872, after the salary had been fixed at $560 from July 1 of that year, a person claiming to be the claimant's attorney wrote to the department, requesting that the order readjusting the salary should be modified, so as to take effect from April 14, 1871. But this application also was accompanied by no sworn statement of revenue.

Upon this statement of facts it appears to us very clear that the acts of Congress give to the claimant no right to any greater salary between April 14, 1871, and July 1, 1872, than that which was fixed at the time of his appointment, and which he has received. The act of June 22, 1854, authorized the Postmaster-General to allow to deputy-postmasters, in lieu of the compensation before allowed, commissions on the postage collected at their respective offices, at varying rates, according to the amounts collected. 10 Stat. 298. The act of July 1, 1864, divided such postmasters into five classes, and substituted fixed salaries for commissions. In the classification made, the claimant, when appointed, belonged to the fifth class, — his salary being less than $100.. The second section of the act enacted that the Postmaster-General shall review once in two years, and in special cases, upon satisfactory representation, as much oftener as he may deem expedient, and readjust on the basis of the first section the salary assigned by him to any office ; but that any change made in such salary should not take effect

until the first day of the quarter next following such order. The fourth section enacted that, at offices which had not been established for two years prior to July 1, 1864, the salary might be adjusted upon a satisfactory return by the postmaster of the receipts, expenditures, and business of his office.   13 id. 335. The act of June 12, 1866, 14 id. 60, amended the second section of the act of 1864, by adding the proviso, that when the quarterly returns of any postmaster of the third, fourth, or fifth class show that the salary allowed is ten per cent. less than it would be on the basis of commissions under the act of 1854, fixing compensation, then the Postmaster-General shall review and adjust under the provisions of that, the second, section.

From a review of these statutory provisions it appears plainly that, after a salary of a postmaster has been fixed, a readjustment by the Postmaster-General must be made before it can be increased, and the readjustment takes effect in all cases prospectively.   The law imposes no obligation upon the government to pay an increased salary, unless a readjustment has preceded it.   And by the act of 1866, the Postmaster-General is not to readjust an existing salary, unless the quarterly returns made show cause for it.   Now, if it be conceded that the quarterly returns made on the last day of each quarter, beginning with June 30, 1871, made it the duty of the Postmaster-General to make a readjustment immediately on the receipt of the returns, still his readjustment was an executive act, made necessary by the law, in order to perfect any liability of the government.   If the executive officer failed to do his duty, he might have been constrained by a *mandamus*.   But courts cannot perform executive duties, or treat them as performed when they have been neglected.   They cannot enforce rights which are dependent for their existence upon a prior performance by an executive officer of certain duties he has failed to perform. The right asserted by the claimant rests upon a condition unfulfilled.   The judgment was therefore erroneous, and must be reversed, and the record remitted to the Court of Claims, with instructions to dismiss the petition ; and it is

*So ordered.*