Peelle, J.,
dissenting:
My reasons for dissenting from the conclusion of the court in this case are briefly these:
The act of March 2,1889 (1 Supp. Bev. Stat., p. 679), was a general appropriation act “for the service of the Post-Office' Department for the fiscal year ending June thirtieth, eighteen hundred and ninety,” in which were incorporated the provisions upon which the claimant relies for recovery.
The material words of the act, for the purpose of this case, are as follows:
“For compensation to clerks in post-offices, six million five hundred and fifty thousand dollars; and that the Postmaster-General be, and he. is hereby, authorized to classify and fix the salaries of the clerks and employees attached to the first-class *423 post-offices, from and after July first, eighteen hundred and eighty-nine, as hereinafter provided:
“Provided,, however, That the aggregate salaries as fixed by such classification shall not exceed the sum hereby appropriated, namely: * * *
“Superintendents of delivery, salary not exceeding forty-five per centum of the salary of the postmaster, as provided by the act of March third, eighteen hundred and eighty-three, graded in even hundreds of dollars, from one thousand three hundred dollars- to not exceeding two thousand seven hundred dollars per annum, except at New York, New York, where the salary of the superintendent of delivery shall be fixed at three thousand two hundred dollars per annum. * * - *
u Provided, That when the salaries hereinbefore stated are adjusted and fixed no clerk or employé shall be promoted or advanced in grade or salary without the approval of the Postmaster-General, in accordance with the requirements of section four hundred and sixty-four, Postal Laws and Regulations, edition of 1887; and hereafter postmasters at offices of the first and second classes shall submit rosters of the clerks attached to their respective offices to the Postmaster-General, to take effect from the first day of the fiscal year (July first), instead of January first, as heretofore; and no roster shall be considered in effect until approved by the Postmaster-General.”
The claimant is seeking to recover the difference between the salary ($1,100) he was paid, as set forth in the findings, and $1,300 per annum, which he claims was the minimum salary due him for the time he served as superintendent of delivery.
The Congress'by the act doubtless intended that the Post- • master-General should classify and fix the salaries as in the act provided, but they equally intended that the salaries to be thus classified and fixed should not exceed in the aggregate the sum appropriated. Hence, by the proviso the Postmaster-General was limited in his action; i. e., he was required to classify and fix the salaries of those named in the act upon the basis therein stated, provided that the aggregate salaries when so fixed did not exceed the sum appropriated. A like proviso is also attached to the classification and fixing of the salaries of clerks in second-class post-offices.
In respect of the compensation of superintendents of delivery, their salaries were to be classified and fixed at “not exceeding forty-five- per centum of the salary of .the postmaster.” That language to my mind clearly shows that as Congress by the proviso had limited the authority of the Postmaster-Gen *424 eral in sncli classification to the sum appropriated, he was given the necessary discretion as to the amount of salary he might fix in order' that the sum appropriated should not be exceeded.
But the claimant contends that the parenthetical clause, i. e., “ graded in even hundreds of dollars, from one thousand three hundred dollars to not exceeding two thousand seven, hundred dollars per annum,” which follows the language fixing the salary of superintendents of delivery, has the effect to nullify both the proviso and the discretionary language. That is to say, the claimant contends that although his salary was fixed at $1,100 per annum, as set forth in the findings, yet as the •Postmaster-General at the same time approved a roster prepared by the postmaster designating him as superintendent of delivery, that therefore he is entitled to $1,300 per annum, because that is the minimum sum named in the clause grading salaries in even hundreds of dollars.
Such was not the view of the Postmaster-General, for in his annual report for 1889, page 38, he says:
“ The neto classification. — The administration of the Post-Office Department was greatly embarrassed at the outset in putting into operation the act of March 2,1889, which related to the readjustment of the duties and the salaries of clerks in the larger post-offices. The law required the classification to take effect July 1, and while it raised the salaries of the lower grades it failed to make adequate appropriation for the same, in consequence of which the salaries of many of the officials of the higher grade had to be reduced to the minimum sum named, when faithfulness and training called for an increase to the maximum. Some of the good clerks have been lost to the service because the salaries were not sufficient to retain them. Certain modifications and amendments of the act will be needed to adjust the scheme to the entire service, and it is quite apparent that the inquiry division, which was abandoned in the new classification, should be restored.”
And in his annual report for the succeeding year, 1890 (p. 213), referring to the classification and fixing of salaries under the act, he said:
“The Congress, however, failed to appropriate a sum sufficient to meet the requirements of the service under the said act by $350,000.”
And, further, he says “that the limited appropriation greatly embarrassed the Department in the administration of the service under this act.”
*425 Thus it will be seen that the Postmaster-General understood, and so held, that his authority was coupled with and limited to the sum appropriated, for he says “the salaries of many of the officials of the higher grade had to be reduced to the minimum sum named when faithfulness and training called for an increase to the maximum;” and this, too, for the reason that the sum appropriated was insufficient for the requirements of the service by $350,000.
Under the act it was made the duty of the Postmaster-General not only to classify — designate the office — but to “ fix the salaries of the clerks and employees” for whom the appropriation was made; and it can not, therefore, be said that when the Postmaster-General approved the roster designating the claimant as superintendent of delivery that ipso facto a certain salary became attached thereto.
The fixing of the salary was as much of an executive act as the classification of the clerks, and when the Postmaster-General fixed the claimant’s salary at $1,100 under the designation stated, it was within his discretion under the act, and he is presumed to have done his duty, and that act alone must measure the liability of the Government.
For, if the meaning of the act be doubtful by reason of the clause “ graded in even hundreds of dollars, from one thousand three hundred dollars to not exceeding two thousand seven hundred dollars,” still as the Postmaster-General, who was charged with the execution of the act, so construed it as to give force and eifect to the proviso, I think his construction should prevail. United States v. Johnson (124 U. S. B., 236, 253.)
In the case of United States v. McLean (95 U. S. R., 750, 753) it was ruled that no obligation was imposed upon the Government to pay an increased salary, though warranted by the quarterly returns of an office, until readjustment had been made by the Postmaster-General; and that such “ readjustment was an executive act, made necessary by the law, in order to perfect any liability of the Government.” And in this respect the court said:
“ But courts can not perform executive duties or treat them as performed when they have been neglected. They can not enforce rights which are dependent for their existence upon a prior performance by an executive officer of certain duties he *426 has failed to perform. The right asserted by the claimant rests upon a condition unfulfilled.”
But the claimant contends that when the Postmaster-General designated him as superintendent of delivery and failed to fix his salary at a sum between $1,300 and $2,700, that, therefore, ipso facto the law fixed his salary at the minimum of $1,300.
The decisions of the court in Langston (21 C. Cls. R., 10) and Foote (23 C. Cls. R., M3), to the effect that where one holds an office the salary of which had been fixed by law previous to his appointment, the same can not be reduced by the mere appropriation of a less sum does not apply in this case for the reason that the classification of the clerks and the fixing of their salaries by the Postmaster-General were authorized by one and the same act, and therefore the salary of the claimant was fixed at the time he was designated as superintendent of delivery, such designation having been made from a lower grade and salary, so that when the claimant was designated as superintendent of delivery at $1,100 per annum it was a promotion and not a reduction.
If the Postmaster-General had wholly failed to act in fixing the claimant’s salary there would be more force in the claimant’s contention, but as the Postmaster-General did act and fixed the claimant’s salary at a sum presumably within the limits of his discretion, I am of the opinion that his acts in the premises are conclusive against the claimant’s right to recovery in this action, especially as he received and accepted the salary of $1,100 per annum, so fixed by the Postmaster-General, without protest or objection.