Booth, Judge,
delivered the opinion of the court:
The facts in this case are fully set out in the findings. This suit is one for the recovery of a transportation tax paid by the plaintiff, a municipal corporation, upon the transportation of sewer pipe to be used in completing a sewage system theretofore planned and established. The city of Wichita Falls, Tex., contracted in writing with C. B. Nichols, a private contractor, to do the necessary excavation, lay sewer piping therein, and back fill the trenches in accord with certain specifications previously adopted by the city in establishing and constructing a complete sanitary sewage system for the same. The determining factor in the contract and the single stipulation herein involved was the one wherein the city expressly covenants to supply at its ex*242pense all the sewer piping necessary for the work. Nichols, the contractor, was by the contract appointed the city’s agent for the express purpose of purchasing all the piping wanted. In pursuance of this appointment the contractor negotiated and finally consummated an agreement of purchase with the San Antonio Sewer Pipe Works, of San Antonio, Tex., covering the sewer pipe needed for the enterprise. The purchase price agreed upon varied in proportion to the sizes of pipe required, the seller stipulating a freight allowance to the purchaser at the rates of freight prevailing August 6, 1920, the purchaser “to pay war tax on freight.” The piping was shipped by rail from San Antonio to Wichita Falls. The railroad company, in addition to freight charges, exacted of the consignee, under section 500 (a) of the revenue act of 1918, 3 per cent of the total transportation charges, amounting in all to $1,468.35, and it is for this amount recovery is sought.
Section 500 (a), 40 Stat. 1057, 1101-1103, provides in terms as follows:
“ That from and after April 1, 1919, there shall be levied, assessed, collected and paid, in lieu of the taxes imposed by section 500 of the Eevenue Act of 1917—
“(a) A tax equivalent to 3 per centum of the amount paid for the transportation on or after such date, by rail or water or by any form of mechanical motor power when in competition with carriers by rail or water, of property by freight transported from one point in the United States to another; and a like tax on the amount paid for such transportation within the United States of property transported from a point without the United States to a point within the United States.”
The plaintiff insists that it is immune from taxation in this particular instance because in establishing and constructing a sanitary sewer, system for the municipality it was exercising a governmental function, and that the means adopted by an instrumentality of a State in carrying forward its governmental privileges are under the Constitution exempt from taxation. In other words, under the Constitution the Federal Government may not tax a municipal corporation nor the means employed by it in carrying into effect its powers.
*243The general proposition advocated by the plaintiff was long since established. The rule of law applicable is quite too familiar to require more, than statement. The difficulty in the instant case is not one of principle but of application. The courts recognize, and have repeatedly stated, that a municipal corporate body acts in a dual capacity. Doubtless in legislating to establish and pay for a general sewer system and adopting the general plans and method to be followed it acts in a public capacity. Apparently, however, when it engages in the actual work of construction, the letting of contracts for work, and the purchase of materials to bring into being the system contemplated by former legislation, the city acts in a ministerial and not a public capacity. In the latter instance it is carrying forward the mandate of the legislative body, and this it may do by employing its own agencies; or, as in this instance, letting out the work to be done to a private contractor. Obviously there is nothing of a public character in the mere manual labor and purchase of materials involved in building a sewer. The Supreme Court, in the case of Johnston v. District of Columbia, 118 U. S. 19, 20, states the law applicable here with manifest preciseness. The court said:
“The duties of the municipal authorities in adopting a general plan of drainage, and determining when and where sewers shall be built, of what size and at what level, are of a quasi judicial nature, involving the exercise of deliberate judgment and large discretion, and depending upon considerations affecting the public health and general convenience throughout an extensive territory; and the exercise of such judgment and discretion, in the selection and adoption of the general plan or system of drainage, is not subject to revision by a court or jury in a private action for not sufficiently draining a particular lot of land. But the construction and repair of sewers, according to the general plan so adopted, are simply ministerial duties; and for any negligence in so constructing a sewer, or keeping it in repair, the municipality which has constructed and owns the sewer may be sued by a person whose property is thereby injured.”
The physical construction of a public sewer system embraces an ordinary commercial enterprise. The city, in its efforts to procure at the lowest price the work and -material indispensable to go forward, is on the same plane as private *244individuals in a like situation. When so engaged the municipality is not exercising governmental powers; on the contrary, as said by the Supreme Court in Flint v. Stone Tracy Co., 220 U. S. 107, 172:
“ It is no part of the essential governmental functions of a State to provide means of transportation, supply artificial light, water, and the like. These objects are often accomplished through the medium of private corporations, and, though the public may derive a benefit from such operations, the companies carrying on such enterprises are, nevertheless, private companies, whose business is prosecuted for private emolument and advantage. For the purpose of taxation they stand upon the same footing as other private corporations upon which special franchises have been conferred.
“ The true distinction is between the attempted taxation of those operations of the States essential to the execution of its governmental functions, and which the State can only do itself, and those activities which are of a private character. The former the United States may not interfere with by taxing the agencies of the State in carrying out its purposes ; the latter, although regulated by the State and exercising delegated authority, such as the right of eminent domain, are not removed from the field of legitimate Federal taxation.” Vilas v. City of Manila, 220 U. S. 345, 356; Metcalf v. Mitchell, 299 Fed. 812.
The Commissioner of Internal Eevenue has ruled that under paragraph (h) of section 500 a municipal corporation is exempt from transportation taxes when the conditions of the statute have been complied with. The language of paragraph (h) is comprehensive and the intent of Congress clear. The plaintiff does not challenge the efficacy of taxing legislation to exempt from the tax imposed persons and property under certain express conditions. The plaintiff did not observe the conditions of the law nor the regulations of the Internal Eevenue Bureau. The court may not overlook an unfulfilled condition. The duty to observe the law and regulations issued in pursuance of its authority is a condition precedent to the right of exemption, and if the plaintiff omits to take advantage of the prescribed right the court is powerless to supply the omission. United States v. McLean, 95 U. S. 750; Rock Island, Arkansas & Louisiana R. R. Co. v. United States, 254 U. S. 141.
*245We do not think it necessary to pursue the discussion further. In our opinion the taxing statute applied and the tax was lawfully exacted. The petition is dismissed. It is so ordered.
GRAHAM, Judge; Hay, Judge; Downey, Judge; and Campbell, Chief Justice, concur.
APPENDIX A
State oe Texas,

County of Wiehita:

This agreement, made and entered into in triplicate, this the 11th day of September, A. D. 1920, and between the city of Wichita Falls, party of the first part, hereinafter called the “ city,” and C. R. Nichols, of said city of Wichita Falls, Texas, party of the second part, hereinafter called the “ contractor,” witnesseth:
That whereas, parties of the first part and second part, on the 21st day of February, 1920, entered into contract for the construction for said city of Wichita Falls sewer additions, extensions, and improvements, to be made by second party, which contract is in words and figures as follows, to wit:
State oe Texas,

County of Wiehita:

Know all men by these presents:
That this agreement in writing made this the 21st day of February, 1920, by and between the city of Wichita Falls, Texas, a municipal corporation, hereinafter styled first party and C. R. Nichols, hereinafter called second party.
Witnesseth:
(1) For the consideration hereinafter stated the second party agrees to construct for the first party, and the first party agrees to have the second party construct for it, during the year of 1920, all sewer additions, extensions, and improvements, to be made by the first party in the year 1920. Said additions, extensions, and improvements to be designated from time to time by the first party’s representative. Said work to be made in and for the city of Wichita Falls, and additions thereto.
(2) For excavating in earth, laying pipe, and back filling ditch second party is to be paid by the first party the following prices for 6, 8, and 12 inch vit. sewer pipe:
0 feet to 3 feet in depth 43 cents, g « 4 a u u 47 cc *246cn o <£> CO rH tH rH £ 57^ V- V, s, ^ r-g S S - s Í5 S S Í3 ÍJ «■H ZO OO 05 O - 3 s 3 <so co *<r os CK h^. ~ ~ R ~ CD d-
For excavation for trench over ten feet in depth by maximum width; price to be in cents twenty-eight times the depth in feet.
The above prices are based upon per lineal foot of trench to be sufficient width to permit the laying of 6, 8, 10, and 12 inch pipe maximum width of 24 inches.
For pipe of larger size which requires an additional width of trench the above schedule will be taken as a basis for the maximum width of 24 inches, and additional payment will be made proportioned upon the additional width of trench over the maximum.
(8) Excavation in material other than earth, the additional price of $3.50 per cubic yard.
(4) For furnishing material, labor, and building manholes complete up to 7 feet in depth, $50.00; for each additional foot, $5.00; said prices applying to each manhole.
(5) First party is to furnish necessary pipe for the construction of said sewer additions, and is to furnish the necessary sand and cement for the laying of said 6, 8, 10, and 12 inch pipe, and to deliver same upon ground where second party is to use same.
(6) Said first party is to pay the second party in cash every two weeks the amount earned as per schedule herein stated and upon the completion of work, first party agrees to make payments in full to second party.
(7) Said work is to commence immediately upon the execution of this agreement by the parties herein, and shall be completed as rapidly as possible under the supervision of the city engineer.
Witness our hands in duplicate this the 21st day of February, 1920.
City of Wichita Falls, Texas,
(Signed) By J. F. Reed,
J. B. Maelow, .

Party of the First Part.

(Signed) By C. R. Nichols,
C. R. Nichols, .

Party of the Second Part.

Attest:
Geo. W. ThoebueN,

City Qlerh.

*247Which, contract was awarded to said second party in all things as required by law, and
Whereas, it is desired by the parties to said contract that same be modified and changed in the matter of the method of payments, schedule of prices, the execution of warrants and bonds, and other changes, as in the plans and specifications and in the contract provided so that said contract as so modified and changed shall be and read as hereinafter stated; and
Whereas, details of plans and specifications of the proposed work and estimates thereon have been submitted to the board of aldermen by the mayor and approved by said board, copy of which specifications containing prices, etc., is attached hereto and made part hereof.
Therefore, it is agreed by and between the parties hereto that such contract as so modified and changed shall be read as follows:
That for and in consideration of the payments and agreements hereinafter mentioned, to be made and performed by the said party of the first part, and under the penalty expressed in a bond bearing even date with these presents and hereto annexed, the said party of the second part agrees with party of the first part to begin the construction and construct a complete sanitary sewer system in and for the city of Wichita Falls, Texas, and to do all extra work in connection therewith for the prices and as stated in the general specifications and at his own cost and expense, except as in said specifications provided, to furnish all lumber for sheathing and material for manholes, which materials shall include all machinery, tools, labor, and equipment for said manholes, and shall furnish all machinery, tools, and equipment necessary to excavate the trenches, lay pipe, and back fill the trenches, all in accordance with the schedule price and the specifications made a part of this contract; all payments to be made and the said work to be performed and materials furnished in the same manner in said plans and specifications stated.
Said first party agrees to pay for said work and materials in the manner provided for in the attached specifications; that is to say, the city agrees to issue and deliver to the said Contractor, and the contractor agrees to accept, legally issued city of Wichita Falls sanitary sewer warrants, to the amount of $250,000.00, said deliveries to be made as the said work progresses and in accordance with the unit prices named in the schedule of prices attached, said warrants to mature from two to ten years from their date and to bear interest at the rate of seven per cent (7 %) per annum, payable semi*248annually, and to be made payable at such places as second party may designate, or as provided by attorneys of second party upon forms for said purpose.
It is agreed that second party shall receive for all materials furnished under extra work (except certain pipe and segment block necessary to complete the said sewer construction, list of which, together with price, is attached to the general specifications and marked “Exhibit B”), cost plus ten per cent; that party of the second part shall act as agent of the first party and shall purchase for said city the pipe and segment block necessary to complete said sanitary system, in the amounts, sizes, and at the prices named in Exhibit B attached to the general specifications for said work; but as to all other material used in the construction of said sewer improvements under extra work, party of the second part shall be entitled to full payment for the cost thereof plus ten per cent.
Party of the second part agrees to perform the work and furnish the materials in accordance with the plans and specifications under the penalty of a bond in the sum of $85,000.00, payable to the mayor of said city and his successors in office, for the use and benefit of the city of Wichita Falls, as well as to all subcontractors, workmen, labor mechanics, and furnishers of material who may furnish material or who may perform labor in said work.
It is agreed that when payment of the contractor has been made by the delivery of the legally issued warrants of the city in the amount as hereinafter provided, the contractor, for further work performed, and materials furnished in the completion of said sanitary sewer construction, shall be paid from the proceeds from the sale of sewer bonds of said city now contemplated to be issued by the city or by further contract entered into between the parties hereto, or should the proceeds from the sale of said bonds be available prior to the time that said $25,000.00 shall be exhausted, then said contractor shall not be required to accept further warrants as herein provided, but shall accept in lieu thereof cash from the proceeds from the sale of said bonds, unless said bonds be sold to second party.
It is agreed that the board of aldermen of the city of Wichita Falls shall pass all necessary ordinances and resolutions authorizing and directing the issuance of said warrants and bonds, and shall provide proper appropriations and levy sufficient taxes to provide the necessary annual interest and a sinking fund for the redemption of said warrants and the proposed bonds when voted.
*249The contractor agrees to commence work as soon as sufficient material is on the ground to assure a continuous prosecution of the work and to complete the same at the earliest date possible.
It is agreed by and between the parties hereto, that party of the second part shall not assign or transfer this contract to any individual, association of individuals, corporation, or partnership, without the consent, in writing, of the party of the first part.
All of the provisions of this agreement shall be performed in the city of Wichita Falls, Texas, and any suit to enforce its provisions or for damages for breach hereof shall be brought in Wichita County, Texas.
In witness whereof, the city has caused its seal to be hereto affixed and these presents to be signed by its mayor and attested to by its city clerk, and said party of the second part has hereto set his hand on this the — day of September, A. D. 1920.
City op Wichita Falls, Texas,
Party of the First Part, By W. D. Cline,

Mayor.

Party of the Second Part.

Attest:
Geo. W. Thorbhrn,

City Clerk.