**James D. TROUTMAN, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 99–971C.

United States Court of Federal Claims.

Jan. 17, 2002.

---

James D. Troutman, Houston, TX, pro se.

Virginia G. Farrier, Commercial Litigation Branch, Donald E. Kinner, Assistant Director, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice for the defendant. Peter Gregory, Associate General Counsel, Office of the General Counsel, Immigration and Naturalization Service, of counsel.

## OPINION

HORN, Judge.

The above captioned case was filed December 3, 1999. The case was originally assigned to Judge Roger B. Andewelt and reassigned to Chief Judge Lawrence M. Baskir, after the untimely passing of Judge Andewelt on August 7, 2001. Chief Judge Baskir subsequently transferred the case to this judge.

The plaintiff receives annuity payments from the Civil Service Retirement and Disability Fund as a retired Internal Revenue Service (IRS) employee. In July 1996, plaintiff accepted a position with the Immigration and Naturalization Service (INS), which is part of the United States · Department of Justice (DOJ). Pursuant to 5 U.S.C. § 8344(a) (1994), the INS deducted an amount equal to plaintiff's annuity payment from his INS pay. The plaintiff filed a complaint in this court alleging that INS improperly deducted his annuity payments from the plaintiff's INS salary. The defendant filed a motion to dismiss, pursuant to the Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC).[1]

## FINDINGS OF FACT

The plaintiff was a federal civil service employee for thirty-seven and one-half years, spending his last twenty-one years as an employee of the IRS, and retiring as a GS–13 revenue officer group supervisor. As a result of his thirty-seven plus years of service, plaintiff became eligible to receive a retirement annuity payable out of the Civil Service Retirement and Disability Fund. *See* 5 U.S.C. §§ 8311(2), 8331(5), 8333 (1994). After retiring from the IRS, the plaintiff began receiving his annuity payments.

On July 21, 1996, plaintiff was reemployed by the federal government in a temporary position as a District Adjudications Officer in the Houston, Texas District Office of the INS. On that same day, plaintiff executed an Appointment Affidavit for the position of District Adjudications Officer. An Office of Personnel Management (OPM) Standard Form 50–B, Notification of Personnel Action (Standard Form 50–B), also was issued, detailing the temporary position that plaintiff had accepted with the INS. The Standard Form 50–B stated that plaintiff was hired under the authority of 5 C.F.R. § 316.402(a) (1996), with an appointment term not to exceed two years. Section 316.402(a) specifies the procedures for an agency making temporary appointments. The Standard Form 50–B also indicated that plaintiff was hired at the GS–9, Step 10 pay level.

When a federal agency hires a retired federal employee who receives annuity payments from the Civil Service Retirement and Disability Fund, the agency must deduct from his pay a sum equal to the amount of the annuity payment. *See* 5 U.S.C. § 8344(a). A federal agency may request a waiver from OPM of the statutory requirement on a "case-by-case basis, for an employee serving on a temporary basis, but only if, and for so long as, the authority is necessary due to an emergency involving a direct threat to life or property or other unusual circumstances." 5 U.S.C. § 8344(h)(2)(i)(1)(B).

On February 22, 1996, pursuant to 5 U.S.C. § 8334(h)(2)(i)(1)(B), the Director of the OPM approved a general waiver request

---

1. The defendant indicated that it did not request oral argument on its motion to dismiss. Although the plaintiff indicated a willingness to present oral argument on his opposition to the defendant's motion to dismiss, he did not request the court to schedule oral argument. The issues raised by the plaintiff's complaint and by the defendant's motion to dismiss are clearly presented and have been thoroughly briefed by both parties. Therefore, oral argument is deemed not necessary in this case.

and delegated waiver authority on a case by case basis to the Director of Personnel, DOJ, as follows:

> [T]o waive the pay/retirement reduction for military and civilian retirees reemployed to assist the Immigration and Naturalization Service (INS) in its critical need to hire and train 5000 new employees, most of whom will be Border Patrol Agents and Immigration Inspectors/Investigators. Both the Administration and Congress have given INS a clear mandate to deal with the critical immigration problems.

The approval by OPM of the waiver request was subject to numerous conditions: 1) the waiver authority was vested with the Assistant Commissioner of Human Resources and Development, INS, or his or her headquarters' delegate; 2) the authority only applied to temporary appointments of one year, with a one year renewal, for a term of not more than twenty-four months, with reemployed annuitants serving at the will of the appointing authority, 5 U.S.C. § 3323(b)(1) (1994); 3) each waiver had to be approved individually, and the number of annuitants reemployed could not exceed 500; 4) the purpose of the appointments was the replacement and/or supplementation of specific positions, including Adjudication Officers; 5) the waiver authority was granted through September 31, 1998; and 6) INS was required to maintain a complete record of each waiver, including a statement from each annuitant that the individual would not accept the position without a waiver, and the waiver records were to be made available to OPM upon request. The Assistant Commissioner of Human Resources and Development, INS then delegated the waiver authority to Cathie J. Kasch, Director of Human Resources, INS.

On June 14, 1996, the Director of Human Resources, Cathie J. Kasch, issued a memorandum, titled "Hiring of Re-employed Annuitants Without a Reduction in Pay or Benefits" (1996 Kasch memorandum), to the INS Directors of Human Resources and Career Development, providing guidelines for hiring reemployed annuitants under the authority granted by OPM to INS. The 1996 Kasch memorandum specified that most appointments under the OPM authority would be at the GS 7, 9, 11, or 12 level, that the majority of appointments would be temporary appointments not to exceed one year, and that the annuitant had to sign a form stating that he or she would not accept a position with INS if their pay or retirement was reduced. In addition to the guidelines given in the 1996 Kasch memorandum, in June 1996, the INS Human Resources and Development Office, in an effort to attract a ready, qualified applicant pool, sent a letter to approximately 600 Officer Corps employees, who had retired from INS within the last five years, to ascertain their interest and availability for reemployment. The 1996 Officer Corps correspondence detailed that the positions available at INS were one year temporary appointments, with a possible one year renewal, for a total of not more than twenty-four months.

In his complaint, plaintiff alleges that prior to accepting his position with INS, he spoke with Ms. Judy Forgey in the local INS personnel District Office in Houston, Texas to inquire whether "his status as a retired Internal Revenue Service (IRS) employee would cause any problem with his annuity or his pay." The plaintiff states that he was advised by Ms. Forgey that "the INS had secured a waiver to hire retired Civil Service Employees, and that there would be no problem." After accepting and commencing employment as a temporary employee at INS, and after hearing that someone from the INS District Office in Dallas was inquiring regarding his annuity payments, the plaintiff again inquired of Ms. Forgey whether a waiver had been obtained which would exempt his pay from the annuity payment deduction of section 8344(a). According to plaintiff's complaint, once again, she informed him that "a waiver had been obtained for him and that no problem existed."

Also according to the plaintiff, when he began his position as a temporary INS District Adjudication Officer, he received his full pay as a GS–9, Step 10 employee for the fifteenth through twentieth pay periods of 1996. Commencing on the twenty-first and twenty-second pay periods of 1996, the INS

began deducting from plaintiff's paycheck the amount he was due to receive under his retirement annuity. After discovering the deduction, the plaintiff twice contacted Ms. Forgey. Subsequently, according to the plaintiff, Ms. Forgey informed him that the INS had secured a waiver for reemployed INS annuitants, but not reemployed IRS annuitants or other retired federal agency annuitants. Thereafter, plaintiff promptly resigned from his position.

Following his resignation, in a letter attached to his complaint, the plaintiff was contacted by the Department of Agriculture, Office of the Chief Financial Officer, National Finance Center, claiming a salary overpayment to the plaintiff for the fifteenth through twentieth pay periods of 1996, the pay periods during which the plaintiff's annuity payments were not deducted from his INS salary. Following a request for a Compromise of Claim of the alleged salary overpayment by the plaintiff, the Executive Associate Commissioner of the Office of Management, INS, waived all INS claims for such salary overpayment. The plaintiff then claimed an underpayment for the twenty-first and twenty-second pay periods of 1996 from INS, the amount representing the setoff of his INS salary by his annuity payments, and that he be allowed to continue his employment for an allegedly guaranteed period of six months at the rate of GS–9, Step 10. The INS denied his claim on January 4, 1999, stating that the agency's authority was limited to waiving outstanding debts owed INS and that, therefore, the agency did "not have the authority to waive recapture of the retirement monies as done in your later pay checks" (for the twenty-first and twenty-second pay periods). The January 4, 1999 INS letter denying the plaintiff's claim informed the plaintiff that his only other recourse was to seek a private bill from Congress or to file a complaint with the United States Court of Federal Claims.

## DISCUSSION

Section 8344(a) requires that "[i]f an annuitant receiving annuity from the Fund [Civil Service Retirement and Disability Fund]... becomes employed in an appointive or elective position ... [a]n amount equal to the annuity allocable to the period of actual employment shall be deducted from his pay...." 5 U.S.C § 8344(a). The Code of Federal Regulations explains that "[w]hen the right to receive annuity continues during reemployment..., the pay of the reemployed annuitant shall be offset by the amount of annuity allocable to the period of reemployment." 5 C.F.R. § 837.303(a) (1996). An agency may obtain permission from OPM to waive these requirements in certain employment circumstances. The statute, 5 U.S.C. § 8344(h)(2)(i)(1)(B), allows OPM to grant such a waiver in times of "emergency involving a direct threat to life or property or other unusual circumstances" that require departure from the standard hiring procedures. On February 22, 1996, OPM found the unusual circumstances, as required by section 8344(h)(2)(i)(1)(B), and granted INS the authority to waive the statutory requirements of section 8344(a) for all military and civilian retirees reemployed to assist the INS.

Plaintiff has alleged he conditioned his employment with INS on INS obtaining a waiver of the requirements of 5 U.S.C. § 8344(a). Specifically, plaintiff states that "[t]here was a contractual agreement between Mr. Troutman and INS regarding his salary (He was hired as a Grade 9 Step 10.)." Plaintiff alleges in his complaint that prior to being hired he was verbally assured by Ms. Forgey in the INS Houston District Office that "INS had secured a waiver from OPM to hire retired Civil Service Employees, and that there would be no problem." Plaintiff states that these verbal assurances by Ms. Forgey were the basis of a contractual agreement that he would be paid "at the GS–9, Step 10 level because that was the highest pay that could be paid to him." According to the plaintiff, since INS did not secure a waiver for his employment, INS breached the alleged contractual agreement.

Defendant filed a motion to dismiss, stating that this court lacks jurisdiction to adjudicate plaintiff's claims. First, the defendant alleges that the plaintiff "has not established that he [plaintiff] possesses a statutory right to repayment of withheld monies." The defendant argues that the plaintiff's complaint is requesting this court to compel the repay-

ment of monies that were withheld from the plaintiff's pay even though INS never authorized a waiver for the plaintiff from the statutory requirements of section 8344(a) prior to his appointment. According to the defendant, the court is prevented from enforcing a "discretionary decision [not to authorize a waiver of the mandatory deduction] that was not made prior to [the plaintiff]'s appointment."

The defendant also alleges that the plaintiff cannot prevail on an implied-in-fact contract theory, by basing his claim on detrimental reliance arising out of the assurances by Ms. Forgey or other INS personnel in Houston that the agency would authorize a waiver from the statutory requirements of section 8344(a). According to the defendant, because the plaintiff assumed his job responsibilities as a result of an appointment to his federal position with INS, "for this [c]ourt to exercise jurisdiction, [the plaintiff]'s claim cannot derive from contractual theories but must be based upon Federal personnel statutes and regulations that mandate payment to [the plaintiff]." Therefore, since the plaintiff "has not, and simply cannot, establish that there is a money-mandating statute conferring jurisdiction upon this [c]ourt," the defendant argues that the complaint must be dismissed.

The defendant has filed a motion to dismiss pursuant to Rules 12(b)(1) of the Rules of the United States Court of Federal Claims for lack of subject matter jurisdiction. Subject matter jurisdiction may be challenged at any time by the parties, by the court *sua sponte*, or on appeal. *Booth v. United States*, 990 F.2d 617, 620 (Fed.Cir.1993); *United States v. Newport News Shipbuilding & Dry Dock Co.*, 933 F.2d 996, 998 n. 1 (Fed.Cir.1991).

Once jurisdiction is challenged by the court or the opposing party, the plaintiff bears the burden of establishing jurisdiction. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). A plaintiff must establish jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988); *Alaska v. United States*, 32 Fed.Cl. 689, 695

(1995), *appeal dismissed*, 86 F.3d 1178 (Fed. Cir.1996). When construing the pleadings pursuant to a motion to dismiss, the court should not grant the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Son Broadcasting, Inc. v. United States*, 42 Fed. Cl. 532, 537 (1998) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted)).

Pursuant to RCFC 8(a)(1) and the Federal Rules of Civil Procedure 8(a)(1), a plaintiff need only state in the complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends." However, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed.Cir. 1997). *Pro se* plaintiffs can be held to less stringent standards than formal pleadings drafted by lawyers. *Boyle v. United States*, 44 Fed.Cl. 60, 62, *aff'd*, 200 F.3d 1369 (Fed. Cir.2000) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). Nonetheless, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

When deciding on a motion to dismiss based on lack of subject matter jurisdiction, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90, (1974); *see also Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir.1995); *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989), *cert. denied*, 517 U.S. 1155, 116 S.Ct. 1542, 134 L.Ed.2d 646 (1996). If a defendant challenges jurisdiction or plaintiff's claim for relief, however, the plaintiff cannot rely merely on allegations in the complaint but must instead bring forth relevant, competent proof to establish jurisdiction. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298

U.S. at 189, 56 S.Ct. 780; *see also Land v. Dollar*, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d at 747; *Catellus Dev. Corp. v. United States*, 31 Fed.Cl. 399, 404–05 (1994). The court may consider all relevant evidence in order to resolve the factual dispute, including evidentiary matters outside the pleadings. *Indium Corp. of America v. Semi–Alloys, Inc.*, 781 F.2d 879, 884 (Fed.Cir.1985), *cert. denied*, 479 U.S. 820, 107 S.Ct. 84, 93 L.Ed.2d 37 (1986).

In order for this court to have jurisdiction over a plaintiff's complaint, the Tucker Act requires that the plaintiff identify an independent substantive right enforceable against the United States for money damages. 28 U.S.C. § 1491. The Tucker Act states:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, this Act waives sovereign immunity to allow jurisdiction over claims (1) founded on an express or implied contract with the United States; (2) for a refund from a prior payment made to the government; or (3) based on federal constitutional, statutory, or regulatory law. *United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (quoting *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 605–06, 372 F.2d 1002, 1009 (1967)); *see also Palmer v. United States*, 168 F.3d 1310, 1314 (Fed.Cir.1999); *Stinson, Lyons & Bustamante, P.A. v. United States*, 33 Fed.Cl. 474, 478 (1995), *aff'd*, 79 F.3d 136 (Fed.Cir.1996). A waiver of traditional sovereign immunity "cannot be implied but must be unequivocally expressed." *Saraco v. United States*, 61 F.3d 863, 864 (Fed.Cir. 1995) (quoting *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969),

*cert. denied*, 517 U.S. 1166, 116 S.Ct. 1565, 134 L.Ed.2d 665 (1996)).

The Tucker Act, however, merely confers jurisdiction on the United States Court of Federal Claims; "it does not create any substantive right enforceable against the United States for money damages." *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607, *reh'g denied*, 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980) (quoting *United States v. Testan*, 424 U.S. at 398–99, 96 S.Ct. 948 (1976)); *see also Saraco v. United States*, 61 F.3d at 865 (citing *Zumerling v. Devine*, 769 F.2d 745, 749 (Fed.Cir. 1985)) (citing *United States v. Testan*, 424 U.S. at 398, 96 S.Ct. 948 (1976)); *see also United States v. Connolly*, 716 F.2d 882, 885 (Fed.Cir.1983) (en banc), *cert. denied*, 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). Individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Mitchell*, 445 U.S. at 538, 100 S.Ct. 1349. For claims founded on a statute or regulation to be successful, "the provisions relied upon must contain language which could fairly be interpreted as mandating recovery of compensation from the government." *United States v. Testan*, 424 U.S. at 400, 96 S.Ct. 948 (quoting *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967)); *see also Doe v. United States*, 100 F.3d 1576, 1579 (Fed.Cir.1996).

The terms of the statute establishing the deduction for annuities when a retired Federal worker is reemployed, and the process to obtain waivers from that requirement, do not provide a cause of action for money damages. *See* 5 U.S.C. § 8344(a), (h)(2)(i)(1)(B). Both sections are straightforward. Section 8344(a) requires the annuity deduction and section 8344(h)(2)(i)(1) provides a mechanism for the head of an Executive agency to request and receive a waiver from the provisions of section 8344(a) from OPM when the agency faces "an emergency involving a direct threat to life or property or other unusual circumstances." There is no indication that Congress intended this provision of section 8344(h)(2)(i)(1) as anything other than authorization for the OPM Director, under specific circumstances, to pro-

vide the head of an Executive agency waiver authority of the requirements of section 8344(a). Nothing in section 8344 establishes any entitlement to a waiver for individual annuitants or money damages for failure to receive such a waiver.

■ The Federal Circuit has stated "there is a 'well-established principle that, absent specific legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government.'" *Hamlet v. United States,* 63 F.3d 1097, 1101 (Fed.Cir.1995), *cert. denied,* 517 U.S. 1155, 116 S.Ct. 1542, 134 L.Ed.2d 646 (1996) (citing *Chu v. United States,* 773 F.2d 1226, 1229 (Fed.Cir.1985)). Therefore, if the plaintiff's claim is based on a breach of contract theory and his "employment was by 'appointment,' a breach of contract action against the government would be precluded." *Hamlet v. United States,* 63 F.3d at 1101 (citations omitted). The plaintiff in *Hamlet v. United States* asserted that the United States Court of Federal Claims had jurisdiction over her complaint because the Agriculture Stabilization and Conservation Service had breached her employment contract when the agency removed her from her position. *See id.* The Federal Circuit, citing *Army & Air Force Exch. Serv. v. Sheehan,* 456 U.S. 728, 735–37, 102 S.Ct. 2118, 72 L.Ed.2d 520 (1982), stated that a court should examine the record and relevant agency regulations and decide whether a plaintiff was "employed by appointment, rather than by contract, and, thus, the [Court of Federal Claims would] not [have] jurisdiction over the [plaintiff]'s contract claim against the United States." *Hamlet v. United States,* 63 F.3d at 1101. The court in *Hamlet v. United States* used the evidence offered by the plaintiff, an employee manual, her participation in the Civil Service Retirement System, and her enrollment in the federal health benefits program, as corroboration that the plaintiff held her position by appointment and not under contract. *See id.* at 1102. The *Hamlet* court concluded that the plaintiff's "breach of contract count does not provide for a substantive right to money damages and cannot provide for jurisdiction under the Tucker Act." *Id.*

The court in *Boston v. United States,* 43 Fed.Cl. 220 (1999), addressing similar issues, offered the following comprehensive explanation:

> After carefully considering the written and oral arguments of both parties, the Court concludes that plaintiff's employment in the civil service was by virtue of appointment, rather than by virtue of an employment contract, and that any entitlement to allowances must therefore be based on the relevant statutes and regulations, not an implied contract.

> \* \* \*

> Where a federal employee holds his position by virtue of appointment, any entitlement to allowances must be based solely on the applicable statutes and regulations, and those statutes and regulations (or promises that they will be followed) do not give rise to an implied-in-fact contract. *See Chu v. United States,* 773 F.2d 1226, 1229 (Fed.Cir.1985).

> \* \* \*

> In this case, plaintiff attempts to do precisely what [ ] courts … [are] unwilling to permit—namely, to fashion an implied-in-fact contract from underlying regulations and a government official's promise to abide by those regulations.

> \* \* \*

> "Federal officials who by act or word generate expectations in the persons they employ, and then disappoint them, do not *ipso facto* create a contract liability running from the Federal Government to the employee, as they might if the employer were not the government." [*Shaw v. United States,* 226 Ct.Cl. 240, 251, 640 F.2d 1254 (1981); *see also Zucker v. United States,* 758 F.2d 637, 640 (Fed.Cir.1985) ]. Thus, if the plaintiff was employed by virtue of an appointment, rather than by virtue of an employment contract, this Court lacks jurisdiction under the Tucker Act to hear plaintiff's claim for breach of contract.

*Boston v. United States,* 43 Fed.Cl. at 221, 225–26. *See also Kania v. United States,* 227 Ct.Cl. 458, 464–65, 650 F.2d 264, 268 (1981) ("Thus it has long been held that the rights of civilian and military public employees against the government do not turn on contract doctrines but are matters of legal status even where compacts are made."); *Berry v. United States,* 27 Fed.Cl. 96, 100 (1992) ("The contract liability enforceable under the Tucker Act does not extend to every agreement, understanding, or compact entered into by the Government. It is well established that the rights of civilian ... public employees against the Government do not turn on contract doctrines, but are matters of legal status.") (citations omitted); *Darden v. United States,* 18 Cl.Ct. 855, 859 (1989) (finding that the most that can be said about plaintiff's job description as a Grade 5 personnel clerk "is that plaintiff was appraised of her forthcoming responsibilities and the salary to which she was entitled for the performance of those duties. It may very well have created certain procedural rights, but under no circumstance may it be viewed as giving rise to a contractual relationship sufficient to create jurisdiction under the Tucker Act."); *Orona v. United States,* 4 Cl.Ct. 81, 82 (1983) (finding "that plaintiff's employment by the AAFES was through appointment and not by contract, and therefore this court has no jurisdiction under the Tucker Act to consider his claim.").

■ "A contract between the government and one of its employees is possible, but it must be specifically spelled out as a contract. *United States v. Hopkins,* 427 U.S. 123, 96 S.Ct. 2508, 49 L.Ed.2d 361 (1976). The contract must be made by a person having authority, *Walton v. United States,* 213 Ct.Cl. 755 (1977)." *Kania v. United States,* 227 Ct.Cl. at 465, 650 F.2d at 268. Otherwise stated, "the law requires that a Government agent who purports to enter into or ratify a contractual agreement that is to bind the United States have actual authority to do so. *See Trauma Serv. Group v. United States,* 104 F.3d 1321, 1325 (Fed.Cir. 1997). The corollary is that any party entering into an agreement with the Government accepts the risk of correctly ascertaining the authority of the agents who purport to act

for the Government ...." *Monarch Assurance P.L.C. v. United States,* 244 F.3d 1356, 1360 (Fed.Cir.2001).

■ Plaintiff has claimed that he conditioned his acceptance of employment with the INS on INS authorizing a waiver for him from the statutory requirements of section 8344(a). Specifically, the plaintiff has alleged that he agreed to work for the INS at the pay level of GS–9, Step 10, but only if the government would authorize the waiver. The plaintiff asserts:

> The defendant, The United States (USA) states that the plaintiff concedes that the employing office [INS] did not obtain a waiver from the statutory requirement. This is a true statement. However, it is also true that the employing office representative for INS assured Mr. Troutman before he started work that a waiver had been secured. It was on this premises [sic] that Mr. Troutman began his employment with INS.

Although the court does not question the plaintiff's recollection of the events surrounding his employment with the INS or that Ms. Forgey in the local INS personnel District Office in Houston gave Mr. Troutman the assurances he claims to have received, these facts are insufficient to support plaintiff's claims. Ms. Forgey was at the District Office level and OPM delegated the authority to grant waivers regarding the deductions of annuities to a headquarters delegate, in this case Ms. Cathie J. Kasch, INS Director of Human Resources, in Washington, D.C., with waiver requests required to be faxed to Washington, D.C. for approval.

In plaintiff's case, Mr. Troutman's employment was subject to the federal statutes and regulations that defined the applicability of section 8334(a). Plaintiff is not entitled to rely on the apparent authority of the Ms. Forgey in the local Houston personnel District Office. As the United States Supreme Court stated:

> Whatever the form in which the Government functions, anyone entering into a arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government

stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority.

*Fed. Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10 (1947).

The plaintiff in this case has not offered any basis for the court to find that his employment was made through anything other than an appointment. To the contrary, the plaintiff signed an Appointment Affidavit which demonstrates that the plaintiff was appointed to his position as a District Adjudications Officer within INS. The oath of office contained on the plaintiff's Appointment Affidavit also suggests that the plaintiff was appointed to his position. The oath in the Appointment Affidavit plaintiff signed is the oath appointed government employees are required to take pursuant to 5 U.S.C. § 3331 (1994) ("An individual, except the President, elected or appointed to an office of honor or profit in the civil service or uniformed services, shall take the following oath .... "). Moreover, the Standard Form 50–B the plaintiff filed with his complaint designates the nature of the personnel action as an appointment. The Standard Form 50–B also provides both the legal authority relied upon for the plaintiff's personnel action, 5 C.F.R. § 316.402(a) (Procedures for Making Temporary Appointments), and that the appoint-

ment of the plaintiff was to the position of a temporary District Adjudications Officer in INS. Finally, both the 1996 Kasch memorandum and the 1996 Officer Corps correspondence repeatedly defined the positions that the INS sought to fill as temporary appointments. Because the plaintiff cannot show that his position with the INS was anything other than an appointment, his claim that "[t]here was a contractual agreement between Mr. Troutman and INS regarding his salary" must fail.[2]

Finally, although not in his complaint, plaintiff appears to argue one additional basis for relief in a late filing titled "Plaintiff's Motion for Lead [sic] to File a Response to the Motion to Dismiss out of Time." The plaintiff states, "[t]he actions taken by the INS payroll section could very well fall into the category of a tort and damages could also be assessed against the United States Government (INS) to remedy the wrong done to Mr. Troutman[.]" Tort relief, however, is not within the jurisdiction of this court. The Tucker Act expressly excludes such claims from the jurisdiction of the United States Court of Federal Claims. 28 U.S.C. § 1491(a)(1) (1994); *see Keene Corp. v. United States,* 508 U.S. 200, 214, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993); *Alves v. United States,* 133 F.3d 1454, 1459 (Fed.Cir.1998); *Brown v. United States,* 105 F.3d 621, 623 (Fed.Cir.) *reh'g denied* (1997); *Golden Pacific Bancorp v. United States,* 15 F.3d 1066, 1070 n. 8 (Fed.Cir.), *reh'g denied, cert. denied,* 513 U.S. 961, 115 S.Ct. 420, 130

**2.** Whether or not INS should have granted plaintiff an individual waiver from the applicability of section 8334(a) is not a question redressable in this court. The United States Court of Claims addressed similar issues in *Hirsch v. United States,* and stated:

The judgment of the officers involved may have been bad, but theirs was the discretion to make both good and bad decisions on personnel matters. There has been no proof that they abused their discretion or acted in an arbitrary or capricious manner. The courts cannot substitute their judgment for those in the Executive Branch entrusted with the discretionary duties of appointment, supervision and promotion of the officers in the Executive Branch. *See Keim v. United States,* 177 U.S. 290, [35 Ct.Cl. 628,] 20 S.Ct. 574, 44 L.Ed. 774 (1900); *Eberlein v. United States,* 257 U.S. 82, [57 Ct.Cl. 590,] 42 S.Ct. 12, 66 L.Ed. 140 (1921). To grant the

relief requested would be a judicial grant of a promotion discretionary with the administrative authorities. This the courts will not do. *Desmond v. United States,* 201 Ct.Cl. 507, 526 (1973); *Allison v. United States,* 451 F.2d 1035, 196 Ct.Cl. 263 (1971).

*Hirsch v. United States,* 205 Ct.Cl. 256, 260, 499 F.2d 1248, 1250 (1974). *See also United States v. McLean,* 95 U.S. 750, 753, 24 L.Ed. 579 (1877) ("They [courts] cannot enforce rights which are dependant for their existence upon prior performance by an executive officer of certain duties he has failed to perform."); *Skrobot v. United States,* 208 Ct.Cl. 475, 479, 534 F.2d 237, 239 (1975) ("We start with the premise that the Court of Claims may not grant promotions where the exercise of such power would result in substitution of the court's judgment for executive agency discretion.").

L.Ed.2d 335 (1994); *D.F.K. Enters., Inc. v. United States,* 45 Fed.Cl. 280, 284 (1999). In reviewing the jurisdiction of this court, the United States Court of Appeals for the Federal Circuit has stated:

> It is well settled that the United States Court of Federal Claims lacks—and its predecessor the United States Claims Court lacked—jurisdiction to entertain tort claims. The Tucker Act expressly provides that the "United States Court of Federal Claims shall have jurisdiction ... in cases *not* sounding in tort." 28 U.S.C. § 1491(a)(1) (1988) (emphasis added), *as amended by* Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902(a), 106 Stat. 4506; *see Aetna Casualty and Surety Co. v. United States,* 655 F.2d 1047, 1059, 228 Ct.Cl. 146 (1981).

*Shearin v. United States,* 992 F.2d 1195, 1197 (Fed.Cir.1993). Therefore, any claim the plaintiff might assert for tort relief could not be entertained in this court.

### CONCLUSION

The court finds that the plaintiff has failed to establish the court's subject matter jurisdiction over his claims. Plaintiff cannot establish that he was employed pursuant to a contract with the INS and has not identified a money-mandating statute that would entitle him to relief. Nor does this court have jurisdiction to hear claims sounding in tort. The court, hereby, **GRANTS** defendant's motion to dismiss, and **DISMISSES** plaintiff's complaint. The Clerk's office shall enter judgment consistent with this opinion. Each party shall bear its own costs.

**IT IS SO ORDERED.**